## Mary E. H. Lawson *v.* Robert Shotwell.

The statute, in defining the equity jurisdiction of the circuit courts, declares, among other things, that it shall extend to "cases of divorce." Hutch. Co. 739, § 6.

Alimony is allowed only as an incident to some other proceeding which may be legally instituted by the wife against the husband, such as an action for the restitution of conjugal rights, divorce, &c., in which cases temporary alimony is allowed pending the suit, and permanent alimony on rendering the final decree in a divorce case in favor of the wife. *Held,* that what the statute requires the chancery court to do in such cases in the different stages, and even after decree, the circuit court is not only permitted, but required to do.

In such cases, the jurisdiction of the one court was intended to be as complete and full as the other, the object being to facilitate, and not to embarrass the remedy of the party by having the wrong only in part redressed by the circuit court, and then sending the party into another court to complete her remedy.

Where equity gains jurisdiction of a cause for one purpose, it will retain it for all purposes so far as to do justice between the parties:— *Held,* that the same rule applies to the class of cases over which the circuit court has jurisdiction; for when jurisdiction is once gained as to the principal question, it is also gained as to the incidents, and that court may proceed to decree in every respect touching the rights of the parties, to the same extent that the superior court of chancery could do in like cases.

Equity inclines at a proper time and in a proper cause to administer justice on a liberal scale in favor of an injured wife against a guilty husband; yet it can dispense with none of those salutary rules constituting parts of the system in her favor. *Held,* that matters which appropriately belonged to a case in the circuit court, and which might, by ordinary diligence, have been embraced in its decree or final action, ought not, upon principles of policy, to be again litigated between the same parties in any other court.

There may be cases in which an original bill, after a decree for a divorce, could be maintained for alimony, but a good reason must be alleged why the alimony at the proper time was not allowed.

The statute (Hutch. Co. 496, § 7), provides that "the court may and shall make such an order touching the maintenance and alimony of the wife, or any allowance to be made to her," &c., "as from the circumstances of the parties and the nature of the case may be fit, equitable, and just;" but this order must be made by the same court pronouncing the decree for a divorce.

A title perfected in the husband to the wife's property before a divorce, cannot, upon any recognized rule of equity, be by her asserted.

Lawson *v.* Shotwell.

Where a marriage is declared void, the wife can recover at law her property.

On appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

The appellant, while she was Mary E. H. Shotwell, filed her bill on the equity side of the circuit court of Lowndes county, against her then husband, Robert Shotwell, for a divorce which was granted her by the circuit court. And while she was still Mary E. H. Shotwell, she filed her bill in the superior chancery court against the said Robert Shotwell, her former husband, for alimony; but after the filing of the bill, she intermarried with Andrew Lawson, whereby her bill abated; the same, however, was reinstated by a bill of review. But before the cause was tried in the chancery court, Andrew Lawson departed this life; and on the suggestion of his death, the suit was reinstated in the name of the said Mary E. H. Lawson.

The defendant Shotwell demurred to the bill, and the chancellor sustained the demurrer, and Mrs. Lawson prayed and obtained an appeal to this court.

*Cocke, Lawson,* and *Mayes,* for appellant,

Filed elaborate briefs, in which they cited *Chunn* v. *Chunn,* 1 Meigs, 131; *Thornsberry* v. *Thornsberry,* 4 Lit. 251; *Holmes* v. *Holmes,* 4 Barb. S. C. R. 295; *Vanduner* v. *Vanduner,* 6 Paige, 367; *Oliver* v. *Piatt,* 3 How. U. S. S. 333.

*Yerger* and *Anderson,* for appellees,

In reply, filed a brief.

Mr. Justice Fisher delivered the opinion of the court.

This is an appeal from a decree of the superior court of chancery, sustaining a demurrer by the defendant to the complainant's amended and supplemental bill.

To understand fully the main grounds of demurrer, as applicable to the amended and supplemental bill, it will be necessary to notice briefly the important allegations of the original bill, and to determine whether the object sought to be accom-

plished thereby, can or ought to be aided, in the present attitude of the case, by the amendment.

It appears from the allegations of the original bill, that the complainant, sometime during the year 1826, intermarried with the defendant. That in consequence of the adultery and cruelty of the husband, the complainant, sometime about the year 1838, was forced to separate from him, and soon thereafter filed her bill praying a divorce *a vinculo matrimonii* in the circuit court of Lowndes county. That her bill coming on for hearing on the 10th day of January, 1840, in said court, a decree was made dissolving said marriage. No decree was then asked or made by the court for alimony out of the husband's estate, or for other allowance. That at sundry times during the marriage, she received as a gift from her father divers slaves and other personal estate, the title to which, in virtue of the law then in force, vested in the husband. The amended and supplemental bill, attempts to give identity and certainty to the slaves and property of the wife, and in this respect to supply a defect in the original bill. It also sets forth the names of certain slaves alleged to be the natural increase of the slaves of the wife. Also the names of others alleged to have been purchased with the money arising from the labor of said slaves, and finally, that the defendant has, since the decree granting the divorce, purchased a certain plantation with money and means arising from the same source.

Upon this statement of the case, two questions arise on the demurrer for our consideration.

First. Whether the superior court of chancery can, or ought now to entertain, jurisdiction of the matters embraced in the two bills; and, secondly, if the jurisdiction can be entertained, is the complainant entitled to a decree for the property, the title to which, during the marriage, vested in the husband.

In regard to the first point, it is argued on behalf of the defendant in support of the demurrer, that the complainant having failed to take her decree for alimony in the circuit court, at the time the divorce was granted, cannot institute a separate proceeding in another court for this purpose.

On the other hand, it is argued that while the circuit court

was invested with ample power to declare the divorce, it could take no jurisdiction of the question of alimony or allowance to be made to the wife, when it was apparent that the decree in this respect should have greatly exceeded in amount the sum of five hundred dollars, the limit to the jurisdiction of that court in pronouncing ordinary money decrees in equity matters.

The constitution authorized the legislature to give to the circuit courts " equity jurisdiction in all cases where the value of the thing, or amount in controversy, does not exceed five hundred dollars; also in all cases of divorce, and for the fore-closure of mortgages." Art. 4, § 16. The legislature by the act of March 2, 1833, organizing the circuit courts, among other things declares, in the language of the constitution in defining the equity jurisdiction of these courts, that it shall extend to " cases of divorce," &c. Hutch. Code, 739, § 6.

The question then comes up for decision, whether the law, by investing the circuit court with full power to decree a divorce, intended that the court might go further, and decree alimony or an allowance to the wife out of the husband's property, when the amount thus decreed should exceed the sum of five hundred dollars.

The authorities on this subject, almost without exception, agree that alimony is allowed only as an incident to some other proceeding, which may be legally instituted by the wife against the husband, such, for instance, as an action for the restitution of conjugal rights, divorce, &c. In which cases, temporary alimony is allowed pending the suit, and permanent alimony on rendering the final decree in a divorce case in favor of the wife. 2 Story's Eq. 908; Pointer on Marriage and Divorce, 86; *Ball* v. *Montgomery,* 2 Ves. Jr. 195; *Jones* v. *Jones,* 18 Maine, R. 311. What, then, must have been the intention of the legislature in conferring this jurisdiction on the circuit court? Can it be inferred, or even plausibly argued, that this court was to be clothed with full power to adjudicate upon the principal matter, and not to be allowed to adjudicate questions which were only incidental to the main questions? When jurisdiction was clearly conferred as to the principal, was it not at the same time conferred as to the incidents?

In answering these several questions, it may be safely asserted, that the legislature, in bestowing upon the circuit court power to grant relief in divorce cases, acted in strict subordination to the authority which had been delegated by the constitution. The question considered by the convention was not to what extent that court might act in this class of cases, but whether it should act at all. When it was determined that it might be authorized to exercise the power, it was of course to do so for the purpose of administering full and complete justice between the parties, as regulated by the statute on the subject of divorces. What this statute required the court of chancery to do in the different stages of the cause, from the time of filing the bill to the final decree, and even as to matters which might, in this class of cases, succeed the decree, the circuit court was not only permitted, but required to do. The jurisdiction of the one was intended to be as full and as complete as the other, the object being to facilitate and not to embarrass the party's remedy, by having the wrong only in part redressed by the circuit court, and then sending her into another court, at great expense and delay, to complete her remedy. Such a construction would violate a favored principle of equity jurisprudence, that when equity gains jurisdiction of a cause for one purpose, it will retain it for all purposes, so far as to do justice between the parties. The same rule applies with equal force to this class of cases in the circuit court. When jurisdiction is once gained as to the principal question, it is also gained as to the incidents ; and the court may proceed to decree in every respect, touching the rights of the parties, to the same extent that the superior court of chancery could do in a like case.

Having decided, then, that the jurisdiction of the circuit court was full and complete in the divorce case, as to the matters now in controversy, at least so far as the claim for alimony is concerned, and the complainant having failed to ask a decree in this respect, the question is, whether the present bill shall be entertained by the superior court of chancery. While equity inclines, at the proper time, and in the proper case, to administer justice on a liberal scale, in favor of an injured wife, against a guilty husband, yet it can dispense with none of those salu-

tary rules constituting part of the system in her favor, any more than in the case of a less favored party. Matters which appropriately belonged to the case in the circuit court, and which might, by ordinary diligence, have been embraced in its decree or final action, ought not, upon principles of policy, to be again litigated between the same parties in another court. It is no answer to say that the matters were not put in issue. Why were they not in issue? Is a party to be harassed, and taxed with the costs of two suits in succession, and in different courts, when the law says one shall be sufficient? Hutch. Code, 496, § 7. Leaving out of view that wholesome rule of equity which discountenances a multiplicity of suits, touching matters which can be as well adjusted by one action, the rule is one of policy, intended to protect innocent persons against frivolous and unnecessary litigation; and if, occasionally, under its operation, there should be a failure of justice, in consequence of the laches of one of the parties, it is better that it should be so, than that the utility of the rule itself should be in the least impaired. The public have an interest in its preservation, and the individual suitor can only complain of his own negligence, if justice should fail in his particular case, and not of the harsh operation of the rule.

It is only necessary to state that the complainant's case falls fully under the operation of this rule, and her bill cannot therefore be sustained.

We do not intend to intimate that there may not be cases in which an original bill, after a decree for a divorce, could not be maintained for alimony, but only that the present bill shows no sufficient reason for not taking, or at least asking, such a decree from the circuit court, touching the matters now in litigation. A good reason must be alleged why the alimony was not at the proper time allowed. What will be a good reason, must depend upon the facts of the case when presented.

There is one other question which we will notice. The bill is framed, as will be seen from the statement of the case, with a view of obtaining a decree for alimony, and also for a restitution of the slaves, and other property, which the wife brought into the marriage. The first question has already been disposed

Lawson *v.* Shotwell.

of. The second one, what counsel call the wife's equity, or right to have a restitution of her property, together with the increase of the slaves, is attempted to be sustained upon principles of equity, independent of any statutory regulation.

It is insisted, that the moment the decree of divorce was pronounced, the wife became entitled to all the property which, in virtue of the marriage, had vested in the husband.

It is possible, and indeed probable, that the court in giving a liberal construction to the statute, (Hutch. Co. 496, § 7,) might make such a decree. The language of the law is, " and the court shall and may make such order touching the maintenance and alimony of the wife, or any allowance to be made to her," &c. " as from the circumstances of the parties and nature of the case, may be fit, equitable, and just." But it must be borne in mind, that the same law which gives this discretion to the court also provides that the order must be made by the same court pronouncing a decree for a divorce.

Under the operation of the principles already stated, this was a matter for the circuit court to adjudicate, and no good reason having been shown why it was not acted on, the bill cannot in this respect either be sustained.

If it be true, aside from the statute, the wife, upon being divorced, can reassert her original title to the property; according to well recognized principles of equity, the bill ought for this purpose to be maintained, as such title is not one of the incidents, as contemplated by the statute, which the court could decree, on an ordinary bill for a divorce. In the latter class of cases, the decree reaches or charges only the husband's property, upon the ground, that notwithstanding the marriage is dissolved, yet, as he is the guilty party, the court will still continue to enforce his original obligation to maintain his wife according to his means, and to do whatever else may be consistent with equity. While he justly forfeits the benefits accruing from the marriage relation, the law has wisely said that he must still continue to bear its burdens, and hence to accomplish this object, a court of equity acquires jurisdiction over his property. In the latter case, however, the wife predicates her right to recover the property solely on the ground that the husband took the title sub-

ject to a tacit condition, that if the marriage through any fault of his, should be dissolved, the title and property should revert to her.

As a matter of course, if this is the nature of the title which the husband acquired in virtue of the marriage, no difficulty will be met with in sustaining the bill. In the investigation of this question, we have given to the argument of counsel, and the authorities cited, a patient and careful examination. We have done more; we have examined many others not cited in the briefs of counsel, and we deem it only necessary, without referring to them, to state the conclusions at which we have arrived. While we are compelled to confess that there is much *dicta* thrown out by the various courts in delivering their opinions sustaining the views of counsel, yet we have met with no case in which any court has ventured to decide, that a title perfected in the husband to the wife's property before a divorce could ever thereafter, upon any recognized rule of equity, be by her reasserted. Our first impressions upon looking into the authorities, were in harmony with the arguments of the complainant's counsel. But we are compelled, upon a deliberate examination of the point, to declare that, as a principle of equity aside from statutory regulation, it has no existence whatever. Where the marriage is declared void, the wife, of course, can recover at law her property; because, in such case, the title never vested in the alleged husband. So where the title has not been perfected in the husband, even in case of a valid marriage, before a divorce, the wife may recover her property, upon the principle that to give him a title, she must be his wife at the time the title itself is perfected.

It is, however, unnecessary to pursue further the investigation of this question.

Decree affirmed.